## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CRIMINAL ACTION** |
| v. | ) | |
| | ) | **No. 11-20117-01-KHV** |
| LARRY STINSON, | ) | |
| | ) | |
| Defendant. | ) | |
|_____ | ) | |

## MEMORANDUM AND ORDER

On June 11, 2012, the Court sentenced defendant to 120 months in prison and five years of supervised release. This matter is before the Court on defendant's [Motion For] Compassionate Release [Or] Reduction In Sentence (Doc. #27) filed July 13, 2020. On August 13, 2020, the Office of the Federal Public Defender filed a supplement in support of defendant's motion. See Supplemental [Memorandum] Re: Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. #29). The government opposes defendant's motion. See Government's Response To Defendant's Motion For Compassionate Release (Doc. #33) filed August 30, 2020. For reasons stated below, the Court dismisses defendant's motion to reduce sentence.

## Factual Background

On November 30, 2011, a grand jury charged defendant with sex trafficking by force, fraud and coercion in violation of 18 U.S.C. § 1591. See Indictment (Doc. #1). On March 26, 2012, defendant pled guilty under a plea agreement which proposed a sentence of 120 months under Rule 11(c)(1)(C), Fed. R. Crim. P. See Plea Agreement Pursuant To Fed. R. Crim. P. 11(c)(1)(C) (Doc. #19). Defendant had a total offense level of 31 with a criminal history category VI for a

guideline range of 188 to 235 months in prison.   See Presentence Investigation Report (Doc. #21) filed June 8, 2012, ¶ 73.   On June 11, 2012, consistent with the proposed sentence in the Rule 11(c)(1)(C) plea agreement, the Honorable Beth Phillips of the United States District Court for the Western District of Missouri, sitting by designation, sentenced defendant to 120 months in prison.   Defendant did not appeal.

Defendant currently is confined at USP Tucson, a Bureau of Prisons ("BOP") facility in Tucson, Arizona.   USP Tucson houses 1,326 inmates.   See BOP, USP Tucson, https://www.bop.gov/locations/institutions/tcp/ (accessed Sept. 18, 2020).   As of September 18, 2020, one inmate and seven staff members at USP Tucson had tested positive for COVID-19.   See BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (accessed Sept. 21, 2020).   The one inmate and all of the staff members who tested positive have recovered.   See id.   Of 344 completed tests for COVID-19 at USP Tucson, only two were positive.[1]   See id.

Defendant states that because of asthma and the poor conditions at USP Tucson, he is at high risk of contracting COVID-19 and of severe illness or death if he contracts it.   With good time credit, defendant's projected release date is August 11, 2021.   Defendant asks the Court to release him and order that as a condition of his original term of supervised release, he serve one year in home confinement.

## Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so.   See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d

---

[1]      Because USP Tucson has had only one inmate with a positive test, it appears that the same inmate tested positive on two separate occasions.

945, 947 (10th Cir. 1996). Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c). Defendant seeks compassionate release under Section 3582(c)(1)(A) based on the COVID-19 pandemic.

Under the First Step Act of 2018, Pub. L. No. 115-391 (S. 756), 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The Court may entertain requests for compassionate release only upon a motion of the BOP, however, or of defendant after defendant "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Here, on June 5, 2020, the warden responded to defendant's request for compassionate release. The government has not shown that the warden responded within 30 days of the request, and it concedes that defendant has exhausted administrative remedies. Accordingly, defendant has satisfied the exhaustion prerequisite to filing a motion for compassionate release.

Under the compassionate release statute, after considering the applicable factors set forth in Section 3553(a), the Court may grant relief if defendant establishes that (1) "extraordinary and compelling reasons" warrant a reduced sentence and (2) a reduced sentence is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Congress specifically authorized the Sentencing Commission to issue policy statements defining "what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied."   United States v. Saldana, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) as determined by the Director of the BOP, an "extraordinary and compelling reason other than, or in combination with," the first three categories.   United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 1, 2018).[2]   In addition, the

---

[2]   Application Note 1 provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)  Medical Condition of the Defendant.—
(i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).   A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)  The defendant is—
    (I)   suffering from a serious physical or medical condition,
    (II)   suffering from a serious functional or cognitive impairment,
     or
    (III)   experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(continued . . .)

-4-

policy statement requires that before granting relief, the Court must find that defendant "is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)).   In December of 2018, the First Step Act amended Section 3582(c)(1)(A) to permit defendants (rather than only the BOP) to file motions for compassionate release.   The Sentencing Commission's policy statement, which was effective November 1, 2018, nonetheless remains the relevant policy statement in determining whether "extraordinary and compelling reasons" warrant defendant's release.   See Saldana, 807 F. App'x at 819 (applying policy statement effective November 1, 2018 to defense motion under Section 3582(c)(1)(A)).   Unless the grounds for resentencing fall within one of the specific categories that Congress has authorized under Section 3582(c), the Court lacks jurisdiction to consider defendant's request.   See id.; United States v. Brown, 556 F.3d 1108, 1113 (10th Cir. 2009).

---

[2](. . . continued)

(B)   Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)   Family Circumstances.
(i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)   Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1 (Nov. 1, 2018).

Here, defendant seeks compassionate release based on his medical condition and the risk that he may contract COVID-19.   The government concedes that a medical condition that elevates an inmate's risk of becoming seriously ill if he contracts COVID-19 may constitute an extraordinary and compelling reason for release.   See Government's Response To Defendant's Motion For Compassionate Release (Doc. #33) at 12.   The government maintains that a medical condition such as asthma during the COVID-19 pandemic satisfies the criteria under subsection (A) of the Section 1B1.13 commentary, i.e. a chronic condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."   Id.   Here, subsection (A) does not apply because unless and until defendant contracts COVID-19, his asthma condition does not limit his ability to provide self-care within the prison environment.   Subsections (B) and (C) also do not apply.[3]   Accordingly, for defendant to establish extraordinary and compelling reasons for release based on his medical condition and the risk of contracting COVID-19, he must rely on the catchall provision of subsection (D).

Under subsection (D) of the Section 1B1.13 commentary, as determined by the Director of the BOP, release may be appropriate based on other "extraordinary and compelling reason[s]," by themselves or in combination with defendant's medical condition, age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(D).   To determine whether defendant presents other extraordinary

---

[3]        Subsection (B) does not apply because defendant is 35 years old.   See U.S.S.G. § 1B1.13, cmt. n.1(B) (defendant must be at least 65 years old to qualify for relief based on age). Subsection (C) does not apply because defendant seeks relief based on his own circumstances, not family circumstances.   See U.S.S.G. § 1B1.13, cmt. n.1(C) (relief based on death or incapacitation of caregiver of minor child or incapacitation of spouse where defendant would be only available caregiver).

and compelling reasons for release, the BOP has identified several "nonexclusive factors" to consider: defendant's criminal and personal history, the nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans and whether release would "minimize the severity of the offense." Saldana, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)).   Where the BOP Program statement is a "permissible construction of the statute," it is entitled to "some deference."   Id. (quoting Reno v. Koray, 515 U.S. 50, 61 (1995)).

As explained above, the First Step Act permits defendants (rather than only the BOP) to file motions for compassionate release.   The Sentencing Commission, however, which has lacked a quorum since the First Step Act was enacted in December of 2018, has not amended the Section 1B1.13 commentary which includes the catchall provision for other extraordinary and compelling reasons "[a]s determined by the Director of the BOP."   U.S.S.G. § 1B1.13, cmt. n.1(D).   In an unpublished decision, the Tenth Circuit implicitly recognized that in addition to the BOP, courts now can make such a determination.   See Saldana, 807 F. App'x at 819–20.   In Saldana, defendant argued that in determining whether he had established other compelling reasons under the catchall provision of subsection (D), the district court should have considered (1) his post-conviction rehabilitation efforts and (2) post-sentencing case law that would have lowered his sentencing range.   See id.   In rejecting defendant's argument, the Tenth Circuit noted first that the district court considered defendant's post-conviction rehabilitation as a factor, but properly concluded, consistent with 28 U.S.C. § 994, that rehabilitation alone is not an extraordinary and compelling reason for relief.   Id. at 820.   Next, the Tenth Circuit held that the district court lacked jurisdiction to reduce defendant's sentence based on post-sentencing

developments in case law because the Section 1B1.13 commentary and BOP Program Statement 5050.50 did not identify a change in law as an "extraordinary and compelling reason" for relief.  Id.[4]  Notably, in addressing defendant's argument for a reduced sentence under the catchall provision of subsection (D) of the Section 1B1.13 commentary, the Tenth Circuit implicitly assumed that the district court, rather than the BOP exclusively (as the commentary suggests), can determine whether a defendant has established "other" extraordinary and compelling reasons.  The Court therefore concludes that on a defense motion, it may— independently of the BOP—determine whether defendant has established "other" extraordinary and compelling reasons that warrant a reduced sentence beyond those stated in subsections (A) to (C) of the Section 1B1.13 commentary.  U.S.S.G. § 1B1.13, cmt. n.1(D); see United States v. Israel, No. 95-00314-CR, 2020 WL 4362258, at *4 (S.D. Fla. July 29, 2020) (overwhelming majority of courts conclude that after First Step Act, courts may independently determine whether "other" extraordinary and compelling reasons warrant release).  But cf. United States v. Garcia, No. 4:05-cr-40098, 2020 WL 2039227, at *5 (C.D. Ill. Apr. 28, 2020) (First Step Act did not override policy statement because definition of "extraordinary and compelling reasons" does not directly conflict with text of First Step Act); see also 28 U.S.C. § 994(t) (Sentencing Commission shall describe what should be considered extraordinary and compelling reasons including criteria to apply and list of specific "examples").

As noted above, BOP Program Statement 5050.50 identifies several "nonexclusive" factors

---

[4]      After the Court has determined that a defendant has shown an extraordinary and compelling reason for a reduced sentence, it may consider post-sentencing developments in case law as part of the balancing of the sentencing factors under 18 U.S.C. § 3553(a).  See United States v. Walker, No. 06-CR-00320-LTB, 2020 WL 5100250, at *4 (D. Colo. Aug. 21, 2020).

for the Court to consider in determining whether "other" extraordinary and compelling reasons warrant a reduced sentence.  See Saldana, 807 F. App'x at 819.   None of the factors specifically mention a defendant's medical condition, but this factor arguably is encompassed in defendant's "personal history."   Id. (citing Program Statement 5050.50).   In any event, the factors are nonexclusive and the catchall provision of subsection (D) encompasses those cases that do not satisfy the specific medical conditions listed in subsection (A) of the commentary.   The Court therefore can consider whether defendant's medical condition—combined with the risk of contracting COVID-19 at USP Tucson—constitutes "other" extraordinary and compelling reasons for a reduced sentence.   See United States v. Campanella, No. 18-CR-00328-PAB-12, 2020 WL 4754041, at *2 (D. Colo. Aug. 17, 2020) (because list of factors in Program Statement 5050.50 is "nonexclusive," court will consider whether defendant's medical condition is extraordinary and compelling reason for sentence reduction); United States v. Brown, No. 4:05-CR-00227-1, 2020 WL 2091802, at *6 (S.D. Iowa Apr. 29, 2020) (in addressing defense motion for compassionate release, district court can consider anything, or at least anything BOP could have considered); see also United States v. Alam, 960 F.3d 831, 835 (6th Cir. 2020) (compassionate release provision gives inmates option to seek release on health grounds).

Here, defendant seeks release because of his asthma and the poor conditions at USP Tucson.   In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent."   United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting Extraordinary, Webster's Third International Dictionary, Unabridged (2020)).   "Compelling" means "tending to convince . . . by forcefulness of evidence."   Id. (quoting Compelling, Webster's Third International Dictionary, Unabridged (2020)).

Defendant's medical condition combined with the present conditions at USP Tucson do not compel a finding that release is warranted.  Only one inmate has tested positive for COVID-19 at the facility.  Defendant argues generally that BOP testing is inadequate and that the number of infections likely is much higher.  Defendant notes that of some 50,000 tests of federal inmates nationally, nearly 13,000 have tested positive for COVID-19 for a positive test rate of more than 25 percent.  At USP Tucson, however, the positive test rate is less than one percent (2 of 344).  Defendant has not shown that compared to home confinement in Kansas, he faces a heightened or imminent risk of exposure to COVID-19 at USP Tucson.  See United States v. Wright, No. CR TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19 and high risk for death or serious illness should he or she contract COVID-19 based on age, medical conditions or other factors).  Likewise, defendant has not established that any of the nonexclusive factors in BOP Program Statement 5050.50 compel his release.  COVID-19 certainly presents a challenge in the prison setting, where inmates generally live in close quarters.  Even so, the risk that COVID-19 may emerge at USP Tucson cannot "justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Even if defendant's medical condition, the conditions at USP Tucson and the COVID-19 pandemic were considered "extraordinary and compelling" reasons for release, the Court would deny relief after considering the various factors under 18 U.S.C. § 3553.  A sentence below 120 months is inconsistent with the seriousness of defendant's offense, the need for deterrence and the need to protect the public.  In particular, defendant pled guilty to sex trafficking by force,

fraud and coercion.   As part of the offense, defendant operated a prostitution ring with some 18 female victims who worked for him.   See Plea Agreement (Doc. #19), ¶ 2.   Many of the victims feared defendant and understood that he had a firearm.   See id.   When defendant gave his victims a "night off," they were expected to have sex with him.   If more than one victim had the night off, they also were expected to have sex with each other.   See id.   When one victim left to work for someone else and later returned, defendant held a firearm to her head after cocking it and told her that if she left again, he would kill her.   See id.   Defendant also was physically abusive.   On one occasion, defendant beat a female victim to the point of unconsciousness.   See id.   When the same victim was incarcerated on a probation violation, she told law enforcement officers that she would rather remain in jail because she feared for her safety if released.   See id. In addition to the offense conduct, defendant has a significant criminal history including prior convictions for domestic battery, aggravated robbery, aggravated battery, obstruction of the legal process and drug offenses.   See Presentence Investigation Report (Doc. #21), ¶¶ 41–44.   Finally, the Court notes that defendant's Guidelines range of 188 to 235 months significantly exceeded the sentence of 120 months that he received under the Rule 11(c)(1)(C) plea agreement.

The Court recognizes that defendant has served a substantial portion of his sentence and participated in a number of BOP programs including drug education and the Challenge Program. By all accounts, he has made significant progress toward rehabilitation.   Even so, based on the offense conduct and his criminal history, the factors under Section 3553(a) do not support a reduced sentence.

In sum, defendant's medical condition, the conditions at USP Tucson and the ongoing COVID-19 pandemic are not "extraordinary and compelling" reasons that warrant his release

under Section 3582(c)(1)(A).   Therefore, the Court dismisses defendant's motion for release for lack of jurisdiction.   See Saldana, 807 F. App'x at 818, 820–21 (because district court found that defendant had not established "extraordinary and compelling reasons" for reduced sentence, it should have dismissed motion for lack of jurisdiction).

**IT IS THEREFORE ORDERED** that defendant's [Motion For] Compassionate Release [Or] Reduction In Sentence (Doc. #27) filed July 13, 2020 is **DISMISSED**.

Dated this 21st day of September, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-12-